UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cr-30044-MGM |
| | ) | |
| [1] ALBERTO MARTE and | ) | |
| | ) | |
| [8] JUAN PEREZ, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO
COMPEL DISCOVERY
(Dkt. Nos. 341 [Perez] & 347 [Marte])

ROBERTSON, U.S.M.J.

I.     INTRODUCTION

Defendant Alberto Marte is charged in a second superseding indictment with one count

of conspiring to distribute heroin and to possess heroin with intent to distribute, in violation of 21

U.S.C. § 846, two counts of aiding and abetting distribution of heroin and possession of heroin

with intent to distribute, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, four counts of

distribution of heroin and possession of heroin with intent to distribute, in violation of 21 U.S.C.

§ 841, one count of conspiring to distribute fentanyl and to possess fentanyl with intent to

distribute, in violation of 21 U.S.C. § 846, and one count of possession of a firearm in

furtherance of drug trafficking, in violation of 18 U.S.C. § 924 (Dkt. No. 300).  The same

indictment charges Defendant Juan Perez with one count of conspiring to distribute heroin and to

possess heroin with intent to distribute, in violation of 21 U.S.C. § 846 (*id.*).

Defendants made twenty-one discovery requests by their July 11, 2017 letter (Dkt. No.

326 at 2).  *See* LR 116.3.  The government responded by letter on September 26, 2017 (Dkt. No.

326).[1]  *Id.*  Defendant Perez rejoined with a motion to compel production of material in response

to five of his original requests (Dkt. Nos. 341, 342).  The court allowed Defendant Marte's

motion to join Defendant Perez's motion to compel (Dkt. No. 347), and the government

responded to Defendants' motion (Dkt. No. 353).  After hearing the parties' arguments on

December 5, 2017 and considering the parties' submissions, the court ordered the government to

provide factual information regarding whether or not the United States Drug Enforcement

Administration ("DEA") and law enforcement agents in the Dominican Republic were engaged

in a joint investigation when Defendant Marte's communications were intercepted by Dominican

authorities pursuant to a Dominican judge's order(s) (Dkt. No. 394).  On February 14, 2018, the

government responded to the court's order by providing the affidavit of DEA Special Agent

("SA") John Barron (Dkt. Nos. 414 and 414-1).  For the reasons set forth below, the court

DENIES Defendants' motion to compel.

      II.    <u>BACKGROUND</u>

      Defendants' charges resulted from their alleged involvement in a large-scale narcotics

trafficking organization in Springfield, Massachusetts.  The Springfield Resident Office ("SRO")

of the DEA undertook an investigation "to determine how [the Defendants' organization]

operated, who supplied [it with] heroin . . . , and how [it] distributed heroin in Western

Massachusetts" (Dkt. No. 353 at 1-2).  Based on evidence that the SRO obtained from a

confidential source who made controlled purchases of heroin, from court-authorized

interceptions of wire and electronic communications occurring over the cellular telephones of

members of the organization, and from searches conducted pursuant to warrants, the government

---

[1] Defendants' requests will be referenced by paragraph number ("¶ ___") in the government's
September 26, 2017 letter, Dkt. No. 326.

charged nineteen alleged participants and recovered more than six kilograms of heroin, two kilograms of fentanyl, and "several" firearms (*id.*).

The government represents that "[d]uring the course of the SRO's investigation, agents learned that communications of [D]efendant . . . Marte were intercepted on a judicially authorized wiretap by authorities of the Dominican Republic in that country" ("Dominican wiretap") (*id.* at 2). According to the government, these communications showed that a source of Defendant Marte's heroin "operated" in the Dominican Republic (*id.*). In addition, agents learned that Defendant Marte made frequent trips to Bronx, New York to purchase heroin (*id.*). "Consequently agents of the SRO frequently passed information to their counterparts working in the New York Field Division of the DEA [who] utilized that information in their investigations of various drug trafficking organizations operating in their district" (*id.*).

In the government's response to Defendants' motion to compel, it represents that it has provided Defendants with the following: "more than 3,000 pages of discovery and recordings in addition to the complete recordings and summaries of all interceptions made on court authorized wiretaps. These documents include reports written by agents that detail the investigation from its inception to its takedown" (*id.*).

III.    DISCUSSION

A.    Legal Standards

Defendants cite Fed. R. Crim. P. 16(a)(1)(E), *Brady v. Maryland*, 373 U.S. 83 (1963), and LR 116.2 to support their motion (Dkt. No. 342 at 2). Rule 16(a)(1)(E) says:

> [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:  (i) the item is material to preparing the defense . . . .

Fed. R. Crim. P. 16(a)(1)(E).  "The defendant, as the moving party, bears the burden of showing materiality."  *United States v. Goris*, 876 F.3d 40, 44 (1st Cir. 2017).  The First Circuit recently indicated that "a showing of materiality requires 'some indication' that pretrial disclosure of the information sought 'would . . . enable[] the defendant significantly to alter the quantum of proof in his favor.'"  *Id.* at 45 (quoting *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975)).

"In 1963, *Brady v. Maryland,* 373 U.S. at 87, clearly established that the government has a duty to disclose to a defendant exculpatory evidence that is material to guilt or punishment."  *Ferrara v. United States*, 384 F. Supp. 2d 384, 397 (D. Mass. 2005), *aff'd,* 456 F.3d 278 (1st Cir. 2006).  Local Rule 116.2 mirrors *Brady's* requirement.  *See* LR 116.2(a).

Defendants' five requests for production of material can be divided into three categories: (1) materials "created by the DEA Special Operations Division related to this and any parallel investigation . . ." (Dkt. No. 326, ¶¶ 14, 16); (2) "[c]opies of any request for [Organized Crime and Drug Enforcement Task Force ("OCDETF")] designation . . ." and "[a]ll written request[s] for funding, application for Law Enforcement Assistance Grants or other sources providing funding for this investigation . . ." (*id.* ¶¶ 15, 18); and (3) "[c]opies of any written reports, Investigative Memorandums [sic] of Understanding, Mutual Recognition Arrangements, e-mails, faxes . . . created by DEA Special Operations Division, DEA [Resident Offices] in New England, New York, Puerto Rico, and any law enforcement agency in the Dominican Republic which identifies any of the individuals listed as a Target Subject[] or Person[] . . . to be intercepted" (*id.* ¶ 17).  Each category of requested information will be discussed in turn.

B.      Defendants' Request for Material Concerning the Dominican Wiretap

Defendants explain that their requests in paragraphs 14 and 16 concern the Dominican wiretap that intercepted Defendant Marte's conversations with a target of the Dominican

4

investigation.  Defendants requested any material that would tend to demonstrate that the DEA and the Dominican authorities were engaged in a joint investigation when Defendant Marte's conversations were intercepted (Dkt. No. 342 at 5-6).  Specifically, Defendants sought "materials that demonstrate the existence of a joint investigation between the various resident offices of the DEA and the Dominican authorities together with the nature of the assistance of the DEA Special Operations Division" in order to determine if the DEA was conducting a joint investigation with law enforcement agents in the Dominican Republic when Defendant Marte's communications were intercepted (Dkt. No. 342 at 5; Dkt. No. 353 at 5-6).  Defendants also requested "access to a full and complete assessment of the Dominican wiretaps" (Dkt. No. 342 at 6).

> 1.  Joint Investigation

Defendants' request for information regarding the DEA's involvement in "parallel investigations" indirectly relates to Defendants' allegedly incriminating conversations that the SRO garnered from the wire interceptions authorized by the Massachusetts District Court under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510-2520 ("Massachusetts wiretaps") (Dkt. No. 326 ¶¶ 14, 16).  The government has disclosed that Defendant Marte's intercepted communications from the Dominican wiretap were included in the SRO's Title III application to the court that authorized the Massachusetts wiretaps which allegedly produced incriminating evidence (Dkt. No. 353 at 5-6).  Defendants contend that they are entitled to discover whether the Dominican wiretap was conducted as part of a joint investigation between Dominican law enforcement and the DEA because, if it was, Defendant Marte could potentially seek suppression of his conversations acquired during the joint interceptions on the ground that they violated his Fourth Amendment rights.  *See United States v.*

*Castro*, 175 F. Supp. 2d 129, 132 (D.P.R. 2001) ("If . . . there was substantial assistance of United States law enforcement personnel so that the foreign wire intercepts were the product of a joint venture, then the protection of the Fourth Amendment may be triggered.").  According to Defendants, if Defendant Marte succeeds in challenging the evidence derived from the Dominican wiretap, Defendants might be entitled to suppression of derivative evidence obtained pursuant to the Massachusetts Title III order.  *See* 18 U.S.C. § 2518(10)(a)(i) ("Any aggrieved person in any trial, hearing, or proceeding in or before any court . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that . . . the communication was unlawfully intercepted . . . ."); *see also* 18 U.S.C. § 2515.

The government rejoins that Defendants have failed to sustain their burden of showing that the additional information they are requesting is material under Fed. R. Crim. P. 16(a)(1)(E) (Dkt. No. 353 at 5-6).  The government indicates that it has provided Defendants with documents responsive to their request, including the judicial orders that authorized the Dominican authorities to intercept Defendant Marte's conversations with a target of the Dominican investigation and transcripts of Defendant Marte's intercepted conversations (Dkt. No. 326 ¶ 21; Dkt. No. 353 at 5-6).[2]  The government points to the fact that Defendants did not rely on any of the previously disclosed information to support their request for additional information regarding a joint investigation (Dkt. No. 353 at 6).  Consequently, the government argues, Defendants' request for additional information concerning the Dominican investigation should be denied.

---

[2] Defendant requested "[c]opies from the original of any documents authorizing a foreign wiretap which resulted from the seizure of evidence derived from electronic surveillance . . . " (Dkt. No. 326 ¶ 21).  In response, the government provided "documentation of foreign judicially-authorized wiretaps . . . " (*id.*).

The analysis of Defendant's request requires a discussion of the law surrounding the admissibility of evidence obtained from foreign wiretaps and the standard for assessing whether or not the foreign wiretaps were the product of American and foreign law enforcement authorities' joint investigation.  Title III governs wiretaps conducted by federal officials in the United States, but "this statute 'does not apply outside the United States.'"  *United States v. Lee*, 723 F.3d 134, 139 (2d Cir. 2013) (quoting *United States v. Maturo*, 982 F.2d 57, 60 (2d Cir. 1992)).  In addition, it is well-settled that "the Fourth Amendment's exclusionary rule, which requires that evidence seized in violation of the Fourth Amendment must be suppressed, generally does not apply to evidence obtained by searches abroad conducted by foreign officials."  *Id.  See United States v. Janis*, 428 U.S. 433, 455 n.31 (1976) ("It is well established, of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act."); *United States v. Valdivia*, 680 F.3d 33, 51 (1st Cir. 2012) ("Ordinarily, the Fourth Amendment's exclusionary rule does not apply to foreign searches and seizures for 'the actions of an American court are unlikely to influence the conduct of foreign police.'") (quoting *United States v. Hensel,* 699 F.2d 18, 25 (1st Cir. 1983)); *United States v. Mitro*, 880 F.2d 1480, 1482 (1st Cir. 1989).  "There are, however, two well-established exceptions to this rule: (1) where the conduct of foreign police shocks the judicial conscience, or (2) where American agents participated in the foreign search, or the foreign officers acted as agents for their American counterparts."  *Valdivia,* 680 F.3d at 51 (citing *Mitro,* 880 F.2d at 1482).

Because the government has provided Defendants with the judicial authorizations for the Dominican wiretaps of Defendant Marte's conversations and Defendants do not suggest that the Dominican authorities' actions are shocking to the court's conscience, it appears that Defendants

are seeking information to determine whether the DEA participated in the wiretaps authorized by the judge in the Dominican Republic or whether law enforcement officials in the Dominican Republic were acting as agents of the DEA when they intercepted Defendant Marte's communications with a target of the Dominican investigation.  Courts analyze the level of cooperation between the American and the foreign law enforcement authorities to determine whether or not there was a joint investigation.  *See Valdivia*, 680 F.3d at 52.  As applied to this case, the court examines the following factors to determine if the DEA and the Dominican authorities were engaged in a joint investigation when Defendant Marte's communications were intercepted:  (1) whether the DEA initiated the investigation in the Dominican Republic; (2) whether the DEA was involved in the decision to seek the Dominican wiretap; (3) whether the DEA agents controlled, directed, or supervised the Dominican wiretap; and (4) whether DEA agents participated in "the implementation of the [Dominican] wiretap[] and recording of conversations."  *Valdivia*, 680 F.3d at 52.  *See Maturo*, 982 F.2d at 61; *Castro*, 175 F. Supp. 2d at 133.

In light of these factors, a review of SA Barron's affidavit indicates that the Dominican investigation, which included interception of Defendant Marte's conversation with a target of the Dominican investigation, was an "independent undertaking by a foreign sovereign" and was not a joint investigation.  *Lee*, 723 F.3d at 141.  Based on his personal knowledge of the investigation and information he obtained from other DEA agents, including the "County Attaché of the DEA's Santo Domingo County Office (SDCO) and [SAs] currently and formerly assigned to the SDCO familiar with both the procedures for local judicial wire intercepts in the Dominican Republic and the investigation of the target of the Dominican wiretap," SA Barron stated that the DEA does not have the authority to initiate investigations in the Dominican

8

Republic and, therefore, did not initiate the investigation that led to the interception of Defendant Marte's communications with a target of the Dominican wiretap (Dkt. No. 414-1 at 1-2 ¶¶ 3, 4). SA Baron further attested that Dominican authorities "operate completely autonomously and make all decisions regarding court process in the Dominican Republic" (*id.* at 2 ¶ 5). Consequently, the DEA did not request that Dominican officials apply for the court order authorizing the Dominican wiretap that intercepted Defendant Marte's communications with a Dominican target (*id.*).  Because the process to obtain judicial authorization for a wire intercept is "exclusively controlled and directed by Dominican . . . law enforcement and judicial authorities," DEA agents did not "supervise, direct, or control" the Dominican wiretap that intercepted Defendant Marte's communication (*id.* at 2 ¶ 6).  They did not personally participate in intercepting and recording Defendant Marte's conversations with a Dominican target either (*id.* at 2 ¶ 7).  *See Valdivia*, 680 F.3d at 52 (finding that the "joint venture exception" did not apply in similar circumstances).

The fact that Dominican law enforcement authorities shared information with the DEA did not make it a joint investigation.  *See Lee*, 723 F.3d at 137, 141; *Castro*, 175 F. Supp. 2d at 133.  Defendants sought disclosure of "memorand[a] of understanding [or] mutual recognition arrangements" between the United States and the Dominican Republic regarding drug interdiction (Dkt. No. 326 ¶¶ 14, 16).  However, based on SA Barron's affidavit, it does not appear that these documents are in the government's custody or control and even if they are, "ongoing, formalized collaboration between an American law enforcement agency and its foreign counterpart does not, by itself, give rise to an 'agency' relationship between the two entities sufficient to implicate the Fourth Amendment abroad."  *Lee*, 723 F.3d at 137; Fed. R. Crim. P. 16(a)(1)(E).

9

The facts provided by the government through SA Barron's affidavit demonstrate that the DEA was not involved in a joint investigation with Dominican authorities when they intercepted Defendant Marte's communications with a target of the Dominican investigation. Accordingly, Defendants' request to compel the government to produce material concerning the Dominican wiretap, as described in paragraphs 14 and 16, is DENIED.

2.      The Results of the Dominican Wiretap

In view of SA Barron's affidavit, it appears that Defendants' request for access "to a full and complete assessment of the success of the Dominican wiretaps" seeks information that is immaterial and is not in the "government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). *See Lee*, 723 F.3d at 141. *Compare United States v. Yousef*, 327 F.3d 56, 129 (2d Cir. 2003) ("The Government is not under an obligation to produce prior statements of foreign law enforcement officials that it does not possess."). Accordingly, Defendants' request for this material is DENIED. [3]

C.      Defendants' Request for Material Concerning Funding Requests

---

[3] Defendant Perez requests "wiretap orders and returns issued in other districts, including the Dominican Republic in order to demonstrate that he has standing to challenge those wiretaps. Without access to the requested materials[,] the Defendant is unable to demonstrate he qualifies to move for suppression under the statutory provisions of Title III" (Dkt. No. 342 at 5). Because Defendant Perez fails to present any reason to believe that he was the target of a foreign wiretap or that the Dominican authorities intercepted his conversations, this request fails the materiality test. *See Goris*, 876 F.3d at 45. If the Massachusetts wiretaps intercepted Defendant Perez's conversations, it appears that he would be an "aggrieved person" who has standing to request exclusion of evidence derived from the Massachusetts wiretaps. *See United States v. Ramos-Gonzalez*, CR. No. 07-0318 (PG), 2010 WL 4181674, at *3 (D.P.R. Oct. 25, 2010) ("The accused is considered an aggrieved party with standing to challenge the admissibility of an intercepted communication if he was a participant in the conversation, the target of the interception, or the owner of the premises where the illegal interception took place."); 18 U.S.C. § 2518(10)(a).

Defendants are seeking disclosure of copies of requests for "OCDETF designation" and for copies of any of the government's other applications for funding of the investigation into Defendants' narcotics operation (Dkt. No. 326 ¶¶ 15, 18). According to Defendants, the OCDETF "is a Federal [p]rogram organized under the Department of Justice designed to assist a variety of Federal [l]aw enforcement [a]gencies with funding necessary to combat transnational criminal enterprises and domestic large scale sophisticated criminal organizations" (Dkt. No. 342 at 7).

Defendants present two reasons for requesting this information. First, they claim that the request is related to Title III's requirement "that the government . . . establish necessity as a prerequisite for obtaining a wiretap order" (Dkt. No. 342 at 7-8). *United States v. Gordon*, 871 F.3d 35, 45 (1st Cir. 2017). "To demonstrate necessity, the wiretap application must include 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" *Id.* at 46 (quoting 18 U.S.C. § 2518(1)(c)). Defendants allege that they are entitled to the requested material because the funding applications "normally . . . paint the whole picture of the success of investigative efforts" and might include information that was omitted from the wiretap application's description of necessity (Dkt. No. 342 at 8). If this occurred, Defendants posit that the fruits of the wiretap would be suppressed because the application failed to comply with Title III's requirements. *See* 18 U.S.C. § 2518(10)(a)(ii).

In addition, according to Defendants, any discrepancies that exist between the funding applications and the wiretap application might provide a basis for a request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). "To obtain a *Franks* hearing, a defendant must make 'a substantial preliminary showing that a false statement knowingly and intentionally, or with

reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause.'" *Gordon*, 871 F.3d at 51 (quoting *Franks*, 438 U.S. at 155-56).

The government persuasively argues that it should not be compelled to produce the information requested in paragraphs 15 and 17 because Defendants fail to sustain their burden of demonstrating materiality and because the contents of the applications are privileged (Dkt. No. 353 at 4-5, 7-9). In response to Defendants' assertion that they need access to a complete picture of the investigation in order to discover any inconsistencies or false statements in the Title III application, the government asserts that the voluminous discovery material that it has provided to Defendants was the original source of the information included in the documents requested in paragraphs 15 and 17 (Dkt. No. 353, at 4-5). The previously disclosed material purportedly contains descriptions of the "successes and failures of the investigation" (*id.*). Notwithstanding access to this information, Defendants have failed to demonstrate any inconsistencies between the discovery materials the government has provided and the description of necessity in the Title III application that would warrant granting their request for copies of the government's applications for funding. Because Defendants' request is based upon speculation, they have failed to establish the materiality of the requested records. *See Goris*, 876 F.3d at 45 ("If . . . a defendant's discovery request is grounded in a speculative theory, a district court's decision to deny the request is not an abuse of discretion.").

To the extent Defendants establish materiality, there is an alternative ground upon which to deny Defendants' motion to compel the production of the material requested in paragraphs 15 and 17. The government represents that the requested documents are not subject to disclosure because they contain attorney work product and privileged investigatory material. According to

the government, the requested material is protected by Fed. R. Civ. P. 16(a)(2), which precludes

disclosure of attorney work product; that is, "reports, memoranda, or other internal government

documents made by an attorney for the government or other government agent in connection

with investigating or prosecuting the case" (Dkt. No. 353 at 7-8).  Fed. R. Civ. P. 16(a)(2).

*Compare White v. Dep't of Justice*, 952 F. Supp. 2d 213, 219-20 (D.D.C. 2013) (upholding

denial of a Freedom of Information Act request for "OCDETF Forms" on the ground that they

contained attorney work product).  Similarly, the government claims that these documents are

not subject to disclosure because they would reveal other ongoing investigations or investigative

techniques (*id.* at 8-9).  The government's contention is persuasive.  *Compare Puerto Rico v.

United States*, 490 F.3d 50, 64 (1st Cir. 2007) (recognizing "a qualified privilege for law

enforcement techniques and procedures"); *Yunes v. U.S. Dep't of Justice*, Civil Action No. 14-

1397 (JDB), 2016 WL 4506971, at \*5-6 (D.D.C. August 26, 2016) (upholding denial of a

Freedom of Information Act request for an OCDETF initiation form because its release would

disclose law enforcement techniques or guidelines, which "might create a risk of circumvention

of the law").

Accordingly, Defendants' motion to compel production of the documents described in

paragraphs 15 and 18 is DENIED.

D.    Defendants' Request for Material Concerning a Target of the Investigation

Defendants request copies of any documents "created by the DEA Special Operations

Division, DEA [Resident Offices] in New England, New York, Puerto Rico, and any law

enforcement agency in the Dominican Republic which identifies any of the individuals listed as a

Target Subject[] or Person[] . . . to be intercepted . . . " (Dkt. No. 326 ¶ 17).  Defendants contend

that they need this material to determine whether the government used an alleged target of the

investigation, identified as "Flacco," as a confidential informant ("CI") without disclosing his role as a CI to the judge who authorized the Massachusetts wiretap (Dkt. No. 342 at 4).  Citing *United States v. Salemme*, 91 F. Supp. 2d 141, 373-74 (D. Mass. 2000), *rev'd in part by United States v. Flemmi*, 225 F.3d 78 (1st Cir. 2000), Defendants argue that such a misrepresentation would entitled them to suppression of communications intercepted pursuant to the Massachusetts wiretap (*id.*).

At the hearing before the undersigned, the Assistant United States Attorney stated that Flacco was not a CI.  Based on this representation by an officer of the court, Defendants' request to compel the government to disclose the information requested in paragraph 17 is DENIED. *See Genereux v. Raytheon Co.,* 754 F.3d 51, 58 (1st Cir. 2014) (courts "'consider an express representation by an officer of the court to be a solemn undertaking, binding on the client.'") (quoting *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.,* 48 F.3d 618, 622 (1st Cir. 1995)).

IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to compel (Dkt. Nos. 341 [Perez] & 347 [Marte]) is DENIED.

It is so ordered.

Dated:  February 20, 2018                              /s/ Katherine A. Robertson
                                                      KATHERINE A. ROBERTSON
                                                      UNITED STATES MAGISTRATE JUDGE