UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| v. | * |
| | *    Criminal Action No. 16-30044-MGM-8 |
| JUAN PEREZ, | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER REGARDING
RENEWED MOTION FOR DISCOVERY
(Dkt. No. 517)

December 18, 2018

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Presently before the court is a Renewed Motion for Discovery filed by Juan Perez ("Defendant"), in which he seeks an order directing the government to provide unredacted copies of affidavits filed in support of applications for warrants under Title III of the Omnibus Crime Control and Safe Streets Act ("Title III"), 18 U.S.C. §§ 2510-2522. The government previously provided Defendant with the Title III applications and orders but, following a series of discovery skirmishes, Defendant learned that these materials were redacted to remove certain attachments to the affidavits discussing a confidential informant. The weighty legal issue presented here is whether the government may withhold disclosure of information contained in Title III warrant applications pursuant to the informant's privilege, *see Roviaro v. United States*, 353 U.S. 53 (1957), despite the requirement set forth in 18 U.S.C. § 2518(9) that the government provide the defendant with a copy of the Title III application and court order before introducing any evidence derived from the

warrant at trial or in any proceeding. The court concludes that if *Roviaro* were the only standard applicable the result would be different, but here Congress has made clear in a comprehensive statutory scheme that the entire application must be provided to the defendant. Accordingly, the court will grant Defendant's motion.

## II. BACKGROUND AND PROCEDURAL HISTORY

Defendant has been charged with conspiracy to distribute heroin and to possess heroin with intent to distribute. (Dkt. No. 464.) He is one of nineteen co-defendants charged in the second superseding indictment with crimes related to drug trafficking. As part of the investigation into the drug trafficking organization, the government applied for and was granted a series of Title III wiretap warrants. (*See* Dkt. Nos. 16-93014-MGM, 16-93015-MGM, 16-93016-MGM, and 16-93019-MGM.) The affidavits filed in support of the warrant applications describe in detail the investigation, what the government expected to learn through the wiretaps, and why traditional investigative techniques were insufficient, among other things.

Following a discovery request submitted by Defendant and the government's declination to provide all the requested information, Defendant filed a Motion to Compel Discovery. (Dkt. No. 341.) Defendant sought, among other items, disclosure of the identity of a target of a wiretap warrant on the theory that this individual was actually a confidential informant, the government had not disclosed this fact to the court in the wiretap applications, and, as a result, the government had not satisfied the "necessity" requirement for Title III warrant applications. *See* 18 U.S.C. § 2518(1)(c) ("Each application shall include . . . a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.").

As the parties litigated this issue before Magistrate Judge Katherine A. Robertson, the government maintained—while being careful not to confirm or deny the target's status as a

confidential informant—that the court had not been misled in approving the wiretap applications. In one of its public filings, the government cited, in a footnote, certain pages in the underlying Title III applications to support its assertion "that the issuing Judge was not misled." (Dkt. No. 426 at 7 & n.4.) Immediately following the citation of the Title III applications, the government stated:

> These documents were filed under seal and remain under seal per order of the Court. The documents have been provided to the defendants in the government's automatic disclosures, but these particular pages were provided in a completely redacted form. At the time, the defendants were also provided notice of the government's declination to provide un-redacted versions of these pages pursuant to LR 7.2 and LR 116.6.

(Dkt. No. 426 at 7 n.4.)

After Judge Robertson denied Defendant's motion, Defendant appealed that ruling to the undersigned. (Dkt Nos. 433, 445.) This court affirmed Judge Robertson's order on this issue, explaining that she "did not clearly err, abuse her discretion, or rule contrary to law in finding that Defendant failed to make an adequate showing of materiality" under Fed. R. Crim. P. 16 based on Defendant's "necessity" argument. (Dkt. No. 492.) This court additionally explained that it had reviewed the underlying Title III applications and orders (which it had originally issued) and found that it was not misled. (*Id.*) In light of the revelation that the government had provided redacted copies of the Title III applications (purportedly in compliance with Local Rule 116.6), however, this court explained that its "ruling is without prejudice to Defendant's ability to seek, pursuant to Local Rule 116.6, unredacted copies of the Title III applications and affidavits already provided by the Government." (*Id.*)

Thereafter, Defendant filed his pending Renewed Motion for Discovery. (Dkt. No. 517.) Defendant asserted that, in providing him with a discovery letter and the Title III materials, the government had not apprised him it "was declining to provide any portion of the Title III materials." (*Id.* at 1.) Instead, he explained: "As a result of a series of hearings on his requests the Defendant has now learned that the Government's Application contained an [Attachment] 'A' that

3

was not provided to Defendant." (*Id.*)[1] With this new information, Defendant moved for production of the redacted attachment under the framework provided by Local Rule 116.6(a), but substantively relying on 18 U.S.C. § 2518(9). In response, the government asserted the "informant's privilege" recognized in *Roviaro*,[2] but did not address Defendant's argument that 18 U.S.C. § 2518(9) controlled over *Roviaro*. Accordingly, at a status conference, the court explained that to the extent Defendant's Renewed Motion for Discovery was governed by a pure *Roviaro* analysis, his motion would be denied. (Dkt. No. 566.) However, the court directed the government to file a supplemental brief addressing Defendant's statutory argument and provided Defendant an opportunity to respond. (*Id.*) With the issue now fully briefed, Defendant's motion is ripe for resolution.

IV. ANALYSIS

Defendant argues the plain meaning of 18 U.S.C.§ 2518(9) requires the government to furnish to a defendant the entire Title III application (including affidavits filed in support without redaction) before evidence derived from a Title III warrant may be introduced in court. This

---

[1] Local Rule 116.6(a) provides, in relevant part:
> If in the judgment of a party it would be detrimental to the interests of justice to make any of the disclosures required by these rules, such disclosures may be declined, before or at the time that disclosure is due, and the opposing party advised in writing, with a copy filed with the clerk, of the specific matters on which disclosure is declined and the reasons for declining. If the opposing party seeks to challenge the declination, that party shall file a motion to compel that states the reasons why disclosure is sought. Upon the filing of such motion, except to the extent otherwise provided by law, the burden shall be on the party declining disclosure to demonstrate, by affidavit and supporting memorandum citing legal authority, why such disclosure should not be made.

In this case, the government apparently did not advise Defendant in a separate writing, as contemplated by Local Rule 116.6(a), that it was declining to produce the entirety of the Title III application but, rather, included the written declinations on the last pages of the affidavits, where the redacted "Attachment A" otherwise would have been located. (*See* Dkt. No. 536 at 2.) In the court's view, Local Rule 116.6(a) does not envision that the advising "in writing" would take the form of placing the written declination within lengthy discovery material; such gamesmanship conflicts with the clear purpose of the rule. In the future, the government would be well advised to provide defendants with declinations in a more transparent manner, in keeping with the letter and spirit of Local Rule 116.6(a).

[2] In *Roviaro*, the Supreme Court recognized a government "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro*, 353 U.S. at 59. "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* However, the Court explained, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.

4

construction is especially evident, Defendant contends, when comparing section 2518(9) to other provisions in Title III which limit disclosure of the application in separate contexts. *See United States v. Arreguin*, 277 F. Supp. 2d 1057, 1061-62 (E.D. Cal. 2010) (discussing statutory scheme and holding that "the government is required to disclose wiretap applications and orders in their entirety before it may use evidence derived from such wiretaps"). The government argues the informant's privilege—which permits the government "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," *Roviaro*, 353 U.S. at 59—limits the disclosure required by 18 U.S.C. § 2518(9). In support, the government cites *United States v. Danovaro*, 877 F.2d 583, 588 (7th Cir. 1989), *United States v. Forrester*, 616 F.3d 929, 942 (9th Cir. 2010) (which expressly rejected the holding in *Arreguin*), as well as three of out-of-circuit district court decisions. Before addressing these cases, the court first sets forth the relevant statutory provisions. *See United States v. Kahn*, 415 U.S. 143, 151 (1974) ("[T]he starting point, as in all statutory construction, is the precise language chosen by Congress in enacting Title III.").

"In Title III, Congress enacted a comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard v. United States*, 408 U.S. 41, 46 (1972). "Title III authorizes the interception of private wire and oral communications, but only when law enforcement officials are investigating specified serious crimes and receive prior judicial approval, an approval that may not be given except upon compliance with stringent conditions." *Id.* (citing 18 U.S.C §§ 2516, 2518(1)-(8)). For example, 18 U.S.C. § 2518(1)(b) provides that each application must include

> a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted.

5

In addition, under section 2518(1)(c), the application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

Under section 2518(8)(b), "[a]pplications made and orders granted under this chapter shall be sealed by the judge. . . . Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction . . . ." *Id.* at § 2518(8)(b). Section 2518(8)(d) states that within a specified time "the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory" consisting of notice of the order or application, the relevant dates, and whether communications were intercepted. *Id.* at § 2518(8)(d). That subsection further provides: "The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice." *Id.*

Under 18 U.S.C. § 2517(3), "the contents" of authorized intercepted communications or "evidence derived therefrom" may be disclosed in federal or state court proceedings by a person giving testimony under oath. However, the ensuing subsection provides that "[n]o otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character." *Id.* at § 2517(4). Another exception to the admissibility of evidence derived from intercepted communications is the key provision at issue here, 18 U.S.C. § 2518(9). It states:

> The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved.

6

*Id.* at § 2518(9).

At issue is whether the government, in making the disclosure required by 18 U.S.C. § 2518(9), may redact portions of an affidavit filed in support of the Title III application pursuant to the informant's privilege.

The leading case on this question is *United States v. Danovaro*, 877 F.2d 583 (7th Cir. 1989). In that case, the government had requested and received permission from the trial court to redact the affidavits filed in support of Title III warrant applications before disclosing them to the defendant, provided the government "furnish[ed] defendants with an explanation of the kind of information that had been eliminated." *Id.* at 587. On appeal, the Seventh Circuit first recognized that "[a]ffidavits submitted to the court are part of the 'application' for the warrant" under 18 U.S.C. § 2518(9) and, thus, must ordinarily be turned over to each defendant. *Id.* Next, the court explained "the affidavit may use codes such as 'CI' in place of names" and reasoned that "[i]f the affidavit may hide important facts from issuing judge and defendant alike, it follows that the affidavit may supply information to the judge while withholding full disclosure from the defendant." *Id.* Still, "[c]odes may not be sufficient. Events may be as revealing as the informant's name . . . . Even innocuous details could let the cat out of the bag. And in the big-time drug business, to inform is to sign one's death warrant." *Id.* Moreover, the court continued, because "[t]he statute requires the applicant to be exceptionally forthcoming," the content may "put the informant's life at risk no matter how clever the coding." *Id.* at 587-88. The Seventh Circuit ultimately concluded that

> the drafters may include in the affidavit facts they think would assist the court in deciding, then withhold from the defendant information that is both dangerous to the informant and unnecessary to sustain the warrant. That is, they may choose to defend their warrant without relying on the redacted information, just as they could forego reliance on information challenged as false and so avoid an adversary hearing into facts behind the application. Such a step hides less than using "CI" in the first place.

*Id.* at 588. It reasoned that this approach "is not inconsistent with § 2518(9)" because "statutes requiring disclosure, but silent on the question of privilege, do not override customary privileges" *Id.* (citing *Upjohn Co. United States*, 449 U.S. 383, 397-98 (1981)).³

On the other end of the spectrum is the Eastern District of California's decision in *United States v. Arreguin*, 277 F. Supp. 2d 1057 (E.D. Cal. 2010). In that case, the court first explained that "Title III was enacted to provide greater protection than that mandated by the Constitution under then-existing precedent," as "[t]he statutory requirements for wiretap authorization are far more burdensome than those mandated by the Constitution." *Id.* at 1060-61. The court then compared section 2518(9) to section 2518(8)(d) (requiring at least "inventory" notice to "persons named in the order or the application" but permitting additional disclosure). The court noted "§ 2518(9) does not include any of the language of discretion found in § 2518(8)(d)" but instead is "[w]orded as an unqualified requirement." *Id.* at 1061-62. "Section 2518(8)(d) demonstrates that Congress knew how to tell the courts when they could decide to disclose only portions of applications or orders for wiretaps, since it provides that the judge may disclose 'such portions' as were 'in the interest of justice.'" *Id.* at 1062. As "[s]ection 2518(9) contains no similar allowances," the court concluded "that when it mandates furnishing a copy of the application and order for wiretaps, § 2518(9) means the whole application and order." *Id.* With regard to *Danovaro*'s explanation that "[s]tatutes requiring

---

³ The court in *United States v. Yoshimura*, 831 F. Supp. 799 (D. Haw. 1993), although agreeing with *Danovaro*, went even further. It concluded: "While § 2518(9) mandates that the application, the order and the contents of intercepted communications shall not be received in evidence unless defendant has previously been provided with a copy of the material, a request for those documents under § 2518(9) is still subject to the showing of good cause required by § 2518(8)(b)." *Id.* at 804. This conclusion, however, makes little sense "because the two sections do not operate in the same context. Section 2518(8) establishes a procedural framework for providing notice to those who have been the target of an actual or attempted wiretap regardless of whether or not they have become the subject of a specific charge of wrongdoing." *United States v. Manuszak*, 438 F. Supp. 613, 623 (E.D. Pa. 1977). "Section 2518(9)," by contrast, "applies only to those who are facing a trial or other adversary proceeding, that is those against whom the government has sought the infliction of some form of punishment," so "it is not at all surprising that Congress would provide them with significantly greater procedural protections than those who have suffered only the invasion of privacy entailed in the wiretap itself." *Id.*; *see also Arreguin*, 277 F. Supp. 2d at 1062 ("*Yoshimura*'s conclusion. . . is contradicted by the plain language of the statute."). Even courts that agree with *Danovaro* have rejected *Yoshimura*'s "good cause" conclusion. *See United States v. West*, 633 F. Supp. 2d 447, 450 (E.D. Mich. 2009; *United States v. Freeman*, 2008 WL 879966, at *4 & n.1 (E.D. Pa. 2008).

disclosure, but silent on the question of privileges, do not override customary privileges," the court in *Arreguin* stated this "proposition may well be correct, [but] it does not apply to Title III, since Congress was not silent on the question of privilege in this statute." *Id.* Rather, "Congress took deliberate action to preserve the privilege where privileged communications were intercepted." *Id.* (citing 18 U.S.C. § 2517(4)). Thus, the court explained, "the fact that Congress provided for the privilege relative to intercepted communications but did not preserve the government's privilege to keep its informants confidential, requires precisely the opposite of the conclusion reached by *Danovaro*; the natural implication is that Congress did not intend for the government privilege to apply." *Id.*

Another significant district court decision on this issue is *United States v. Coles*, 2007 WL 2916510 (E.D. Pa. Oct. 5, 2007). There, the court noted that while "[t]he *Arreguin* court's analysis has the appeal of simplicity," it did not agree "that Congressional intent on this question is so self-evident." *Id.* at *5. The court explained: "While it is indisputable that Congress intended to preserve the due process rights of defendants when it drafted Title III, it also indisputable that this was not its only purpose." *Id.* at *6. Following the approach in *Arreguin*, in the court's view, would "vindicate one Congressional purpose, due process, at the expense of two others, effective crime fighting and third party privacy. This seems too severe a conclusion to draw from the textual peculiarities discussed in *Arreguin*." *Id.* Instead, the court adopted the approach in *Danovaro*, explaining: "If the Government does not rely on the redacted information as evidence essential to its establishment of necessity under Title III, and as long as they do not intend to introduce the redacted information itself into evidence, we are hard pressed to conclude that Defendant's due process rights would be impacted to the point where the countervailing considerations addressed by Congress should be subjugated." *Id.* Accordingly, the court concluded, "[a]bsent a clear Congressional directive to do so,

9

this Court must not alter the balance between the competing goals of Title III, but rather must seek to reinforce them." *Id.* at *7.

Lastly, the Ninth Circuit, in *United States v. Forrester*, 616 F.3d 929 (9th Cir. 2010), addressed this question as well. On appeal, the defendant urged adoption of the reasoning in *Arreguin*. *Id.* at 942. The Ninth Circuit, however, found "the reasoning in *United States v. Danovaro* more persuasive" and instead adopted that approach without extensive analysis. *Id.*

As the parties concede there are no First Circuit decisions directly addressing this question, the court must determine which approach is most persuasive.[4] This court agrees with the analysis set forth in *Arreguin* and believes the First Circuit would likely adopt its reasoning, despite the fact that the Ninth Circuit has since repudiated it. Admittedly, *Danovaro*'s approach has garnered a large majority of support among cases addressing this question. However, the key proposition supporting *Danovaro*'s holding is that "[s]tatutes requiring disclosure, but silent on the question of privilege, do not override customary privileges." *Danovaro*, 877 F.2d at 588 (citing *Upjohn Co.*, 449 U.S. at 397-98). But as *Arreguin* points out, Title III is not actually silent on the question of privileges; rather, it is vocal on privileges, albeit in a different context. *See Arreguin*, 277 F. Supp. 2d at 1062 (citing 18 U.S.C. § 2517(4)).

Granted, *Danovaro* is correct as a general matter in that "Congress is understood to legislate against a background of common-law adjudicatory principles." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). "Thus, where a common-law principle is well established, . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except where a statutory purpose to the contrary is evident." *Id.* (internal citations and

---

[4] The court notes that, although not cited by the parties, the First Circuit's decision in *In re Lochiatto*, 497 F.2d 803, 807-08 (1st Cir. 1974), could be read as indirectly supporting the government's position. Ultimately, however, the court believes *In re Lochiatto* provides little guidance on this specific question because it relates to a very different context ("the efficient administration of the grand jury," *id.* at 805)) and does not address the key provision at issue here, section 2518(9). In addition, the court imagines the First Circuit would consider the subsequent case law directly addressing the issue.

10

quotation marks omitted); *see also United States v. Texas*, 507 U.S. 529, 534 (1993) ("In such cases, Congress does not write upon a clean slate. . . . In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." (citation omitted) (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978))). Nevertheless, this presumption does not rise to the level of a "clear statement" rule, such as that required for Congress to abrogate Eleventh Amendment state sovereign immunity. *Astoria Federal Sav. & Loan*, 501 U.S. at 108 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 243 (1985)). The Supreme Court has explained the presumption in favor of common-law principles may be rebutted not just by an express statement, but also by implication. *See id.* at 110 ("The presumption here is thus properly accorded sway only upon legislative default, applying where Congress has failed expressly *or impliedly* to evince any intention on the issue." (emphasis added)).

Given the specific language used in section 2518(9), the overall statutory scheme and structure of Title III, and the fact that Congress did speak to the question of privileges and calibrated varying levels of disclosure in specific situations, this court believes congressional intent to require complete disclosure of the affidavit is clear. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp.*, 436 U.S. at 625 (explaining that although the Death on the High Seas Act did "not address every issue of wrongful-death law," such as whether "loss of society" damages were available, the Act did address damages in general, and when a statute "does speak directly to a question, the courts are not free to supplement Congress' answer so thoroughly that the Act becomes meaningless"). In Title III, Congress certainly knew how to preserve privileges, 18 U.S.C. § 2517(4), and both made clear when a court has discretion to order less than the entire application be disclosed and provided a specific standard for such disclosure in different situations, 18 U.S.C. § 2518(8). The fact that Congress included none of this language in section 2518(9) is significant

11

evidence it acted purposefully. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion. . . . We would not presume to ascribe this difference to a simple mistake in draftsmanship." (internal quotation marks and citations omitted)).

For similar reasons, the court also rejects the rationale in *Coles* that, rather than focusing on the "textual peculiarities" in the statute, courts should instead consider the overall "balance between the competing goals of Title III." *Coles,* 2007 WL 2916510 at *6-7. It is not the court's role to substitute its views for those of Congress on the appropriate balance of conflicting interests, especially given the comprehensive and carefully constructed statutory scheme set forth in Title III. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Moreover, with regard to *Cole*'s statement that the approach set forth in *Danovaro* adequately protects a defendant's "due process rights," Congress intended Title III "to provide greater protection than that mandated by the Constitution." *Arreguin*, 277 F. Supp. 2d at 1060 (citing *Gelbard*, 408 U.S. at 48 n.7).

The court is certainly understanding of the government's legitimate safety concern regarding disclosure of this type of information to a defendant. Therefore, the court is amenable to a government proposal for a strong protective order prohibiting disclosure of the redacted information to third persons, among other limitations. *See Applications of Kansas City Star*, 666 F.2d 1168, 1171, 1176 (8th Cir. 1981) (approving the district court's order prohibiting the defendant and his attorneys from disclosing the contents of Title III applications and affidavits provided under section 2518(9)). In the end, however, the court recognizes that a strong protective order may not be sufficient. As the court explained in *United States v. Manuszak* 438 F. Supp. 613, 625 (E.D. Pa. 1977):

I recognize that where the wiretap application and order contain sensitive information the disclosure of which could prejudice an ongoing investigation, the government may be put to the hard choice of either foregoing its proceeding against the defendant or risking frustration of its investigation. But this is a choice which Congress has in plain language decreed the government must make when it seeks to deprive a person of his liberty on the basis of wiretap evidence. In truth it is not much different than a number of other difficult decisions which the government must make in pursuing a criminal prosecution . . . .

## V. CONCLUSION

For the foregoing reasons, the court ALLOWS Plaintiff's Renewed Motion for Discovery, provided that the government may request a protective order before disclosing the redacted information.

    _/s/ Mark G. Mastroianni_
MARK G. MASTROIANNI
United States District Judge